IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| FOUNTAIN LEASING, LLC | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No.: _____ |
| RENASANT BANK, | § § § | |
| Defendant. | § § | |

## COMPLAINT

Comes the Plaintiff, by counsel, and for cause of action would show:

### I. PARTIES

1. The Plaintiff is a Tennessee limited liability company with its principal place of business in Knoxville, Tennessee.

2. Renasant Bank is a Mississippi for-profit bank, registered as a foreign corporation in Tennessee, and may be served with process through their registered agent at CT Corporation System, 800 S Gay Street, Suite 2021, Knoxville, Tennessee 37929.

### II. JURISDICTION AND VENUE

3. This court has jurisdiction in this case pursuant to 28 USC § 1332 as the parties reside in different states and the amount in controversy exceeds $75,000.00. It is alleged that all or a majority of the acts set forth in this Complaint took place at the Renasant Bank branches located in Nashville, Tennessee. As a result, jurisdiction and venue lie with this Court.

1

## III. FACTS

4. Fountain Leasing, LLC ("Fountain Leasing") has never authorized a deposit account to be opened with Renasant Bank, has never received any statements of a deposit account with Renasant Bank, and is not aware that it has a deposit account with Renasant Bank, either in Nashville or anywhere else.

5. Fountain Leasing employed Rich Beaird, also possibly known as Daniel Rich Beaird ("Mr. Beaird"), to be vice president of its Nashville office. Mr. Beaird is not an endorser or signee on any of Fountain Leasing's bank accounts.

6. In mid-September 2010, Fountain Leasing became aware that some of its equipment had been sold by an equipment dealer and asked the dealer about the proceeds of the sale. The dealer stated that it had forwarded the funds to Fountain Leasing by check dated March 19, 2010, and provided a copy of the check to Fountain Leasing. The back of the check was stamped "For Deposit Only Renasant Bank." This check is attached as Exhibit 1.

7. Fountain Leasing then sought information regarding other equipment in possession of the dealer and discovered at least three other pieces were sold. Two checks made payable to Fountain Leasing were deposited in Renasant Bank's Nashville branch on or about February 24, 2010. The only endorsement on their back appears to be "Fountain Leasing." These two checks are attached as collective Exhibit 2 to this Complaint.

8. Yet another check made payable to Fountain Leasing was deposited into the Nashville branch of Renasant Bank on or about July 2, 2010. It is endorsed "Credited to the Account of the Within Named Payee." A copy of this check is attached as Exhibit 3.

9. Upon information and belief, Mr. Beaird deposited and/or cashed other checks into this account he opened at Renasant Bank that were made payable to "Fountain Leasing."

2

10. Fountain Leasing contacted Vicki Walk, a loan officer with Renasant Bank, on September 16, 2010, to inquire as to whose account these monies were deposited into. Ms. Walk conducted an investigation and found that a deposit account had been opened under the name "Fontaine Leasing" (or something very similar) and that the last name of the authorized signature on the account was "Beaird."

11. As previously stated, Mr. Beaird did not have authority from his employer, Fountain Leasing, to sign or endorse instruments on behalf of the employer or to act at all in a responsible capacity with instruments such as checks from the sale of Fountain Leasing's equipment.

12. The buyers of the equipment believed they were paying Fountain Leasing for the equipment when Mr. Beaird asked them to make the checks out to "Fountain Leasing."

13. Renasant Bank did not have authority to deposit the subject checks into the account Mr. Beaird had opened and did so without a corporate resolution from Fountain Leasing to do so, and without any other authorization of any kind from Fountain Leasing.

14. At no point did Renasant Bank inquire of Fountain Leasing whether Mr. Beaird had the authority to deposit Fountain Leasing's checks.

15. Upon knowledge and belief, at no point did Renasant Bank inquire of Fountain Leasing whether any of the checks were Mr. Beaird's regular pay or a regular paycheck or expense reimbursement checks.

16. Upon knowledge and belief, at no point did Renasant Bank employees actually investigate the checks' validity with Fountain Leasing.

17. All of the above-described actions and inactions of Renasant Bank employees were taken within the ordinary course and scope of their employment with Renasant Bank. Renasant Bank is therefore liable for those actions under the doctrine of *respondeat superior*.

## Claim One – Renasant Bank's Conversion

18. Fountain Leasing re-alleges and incorporates herein the allegations set forth in Paragraphs 1-11.

19. Renasant Bank and Mr. Beaird committed the tort of conversion, pursuant to Tenn. Code Ann. § 47-3-420, when they applied the use of the checks to their own use by depositing them in an account in a bank other than what the checks were intended for.

20. The checks were intended to be delivered to Fountain Leasing for the payment of the sold equipment.

21. Mr. Beaird was not entitled to endorse the checks to be delivered to Fountain Leasing or to receive payment for those checks for his own personal use.

22. Renasant Bank made or obtained payment with respect to the checks for Mr. Beaird's own personal use without the consent of Fountain Leasing.

23. The checks were so irregular as to call in to question their authenticity.

24. Renasant Bank acted with disregard of and refusal to learn the facts concerning the check, Mr. Beaird's entitlement to payment of the checks, and Mr. Beaird's lack of entitlement to payment of the checks for his own personal use. These facts were available to Renasant Bank. Upon information and belief, Renasant Bank's actions and/or inactions were in violation of ordinary and customary banking policies, practices and procedures, and the applicable standards in the banking industry.

25. Renasant Bank's actions and/or inactions in making and obtaining payment with respect to the checks for Mr. Beaird's personal use was not in good faith.

26. Renasant Bank is liable to Fountain Leasing for conversion of the checks under Tenn. Code Ann. § 47-3-420.

27. Fountain Leasing suffered damages as a result of these conversions, and demands recovery from Renasant Bank as a result of these actions and/or inactions.

### Claim Two – Defendant's Knowledge of Mr. Beaird's Breach of Fiduciary Duty

28. Renasant Bank breached its duty of inquiry owed to the payee of the checks by accepting the checks and depositing them into the account opened by Mr. Beaird.

29. Tennessee's *Uniform Commercial Code*, specifically §47-3-302 *et seq.*, is the backbone for this cause of action under the Complaint.

30. Someone who takes an instrument is subject to another's claim to that instrument unless the taker is a holder in due course. *Tenn. Code Ann. § 47-3-306*. A person cannot become a holder in due course if that person has notice of another's claim to the instrument. *Tenn. Code Ann. § 47-3-302(a)(2)*. Finally, a person has notice of someone else's claim to an instrument if he has notice that the person he takes the instrument from has breached his fiduciary duty to someone else by his actions concerning the instrument. *Tenn. Code Ann. § 47-3-307(b)*.

31. Under Tennessee law, Renasant Bank cannot be a holder in due course of the subject checks because it had notice that Mr. Beaird was breaching his fiduciary duty as an employee of Fountain Leasing by depositing the checks in an account he had opened. Renasant Bank's interest in the subject checks is, therefore, subject to the claims of Fountain Leasing, making Renasant Bank liable to Fountain Leasing for the value of the checks deposited.

5

32. Renasant Bank and its employees knew that Mr. Beaird worked for Fountain Leasing and allowed him to open up an account with a name very similar to Fountain Leasing, where he then began depositing checks for his own benefit. Therefore, Tenn. Code. Ann. § 47-3-307(b) applies to Renasant Bank in this case.

33. The subject checks were taken by Renasant Bank from Mr. Beaird for payment or collection or for value.

34. Mr. Beaird was a fiduciary of Fountain Leasing, for reasons such as he was an employee or agent of Fountain Leasing having responsibility for the sale of equipment and checks to Fountain Leasing stemming from such sales.

35. Renasant Bank knew that Mr. Beaird was Fountain Leasing's fiduciary with respect to the checks. Renasant Bank knew that Mr. Beaird was a Fountain Leasing employee and agent who had responsibility for the subject checks. Fountain Leasing seeks to recover based on Mr. Beaird's breach of fiduciary obligation and Renasant Bank's knowledge of the breach.

36. Fountain Leasing was the payee of the checks that Mr. Beaird endorsed and then deposited into an account he had opened at Renasant Bank.

37. Renasant Bank's claims to the subject checks were subordinate to the claims of Fountain Leasing's claims under Tennessee law.

38. As a result of the actions and/or inactions of Renasant Bank, Fountain Leasing suffered great damages, and demands recovery from Renasant Bank in this action.

### Claim Three – Punitive Damages

39. Renasant Bank's actions and/or inactions were intentionally, fraudulently, maliciously and/or recklessly committed and done in bad faith.

40. Fountain Leasing is therefore entitled to an award of punitive damages against Renasant Bank.

WHEREFORE, PREMISES CONSIDERED, Fountain Leasing respectfully demands:

1. That the Defendant be served with process and be required to answer this Complaint in accordance with law.

2. That a judgment for compensatory damages be awarded against Defendant for the amount of the checks, the total amount of which will be proven at trial.

3. That a judgment for punitive damages be awarded against Defendant in an amount not less than five-hundred-thousand dollars ($500,000.00).

4. That the costs of this action, interest, and attorneys' fees be awarded to Fountain Leasing and taxed to Defendant; and

5. Such further relief as to which Fountain Leasing shows itself entitled.

This the 18 day of October, 2010.

Respectfully submitted,

*s/ Lynn Tarpy*
Lynn Tarpy 006017
Jesse D. Overbay 027449
Attorneys for Fountain Leasing
Hagood, Tarpy & Cox, PLLC
2100 Riverview Tower
900 South Gay Street
Knoxville, Tennessee 37902
(865) 525-7313

7